# In the United States Court of Federal Claims

**OFFICE OF SPECIAL MASTERS**
**No. 21-0192V**

|  |  |
|---|---|
| MELISSA HENRY, | Chief Special Master Corcoran |
| Petitioner, | Filed: March 30, 2026 |
| v. | |
| SECRETARY OF HEALTH AND HUMAN SERVICES, | |
| Respondent. | |

*Leah VaSahnja Durant, Law Offices of Leah V. Durant, PLLC, Washington, DC, for Petitioner.*

*Adam Nemeth Muffett, U.S. Department of Justice, Washington, DC, for Respondent.*

## RULING ON ENTITLEMENT[1]

On January 7, 2021, Melissa Henry filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"), which she amended on June 22, 2022. Petitioner alleges that she suffered a shoulder injury related to vaccine administration ("SIRVA") resulting from a tetanus diphtheria acellular pertussis ("Tdap") vaccine received on July 21, 2020. Amended

---

[1] Because this Ruling contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I find the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters.

The parties could not settle the claim, and have now fully briefed their positions (ECF Nos. 48, 50, 52). For the reasons set forth below, I find that record evidence preponderantly establishes that Petitioner likely did not experience pre-vaccination shoulder pain that would explain her post-vaccination symptoms; that her shoulder pain likely began within 48 hours of vaccination; and that she has preponderantly satisfied the remaining Table SIRVA and statutory requirements. She is therefore entitled to compensation.

## I.    Relevant Factual History

### A.  Medical Records

Petitioner's pre-vaccination medical records are unremarkable for any right shoulder problems, although Respondent cites a pre-vaccination record where Petitioner reported back pain that radiated into her lower neck and it felt like it pinched her arm (but not stating which arm). Ex. 2 at 181, 193. On July 21, 2020, Petitioner received a Tdap vaccination in her right arm. Ex. 1; Ex. 7 at 12.

Six days after vaccination (July 27, 2020), Petitioner saw her primary care provider ("PCP") for treatment of lower back pain, increased urinary frequency, and a skin tag that was causing irritation. Ex. 2 at 488. The record of this appointment is silent on shoulder problems. *Id*. at 479-99. On August 4, 2020 (two weeks post vaccination), Petitioner saw her cardiologist for chest pain, without mentioning shoulder pain. Ex. 3 at 18-19.

On August 11, 2020, Petitioner returned to her PCP's office, now complaining of right shoulder pain. Ex. 2 at 509. The record of this visit states that Petitioner's pain had been "present for several months," but also states that she "has experienced right shoulder pain for almost a full year," though she had been able to cope with it previously by stretching and doing physical therapy exercises. *Id*. The record adds that Petitioner's pain had become more bothersome over the prior month, and in the past few days her pain had increased and she noticed a loss of strength. *Id*.

On examination, Petitioner's right shoulder exhibited pain with abduction  and tenderness to palpitation. Ex. 2 at 511. X-rays were normal. *Id*. at 512. Petitioner was assessed with right shoulder pain,[3] given medication and range of motion ("ROM") exercises, and referred to an orthopedist. *Id*.

---

[3] It appears that the record of this visit originally included a diagnosis of chronic shoulder pain, but was changed to acute shoulder pain at Petitioner's request in November 2020. Ex. 2 at 509.

On August 12, 2020 Petitioner met with physical medicine and rehabilitation specialist Phillip Henning, D.O., for right shoulder pain. Ex. 3 at 20. The record of this appointment states that Petitioner reported bilateral shoulder pain symptoms for "the past couple of months, [which had become] worse in [the] past two weeks." *Id*. However, the record also states that Petitioner's pain "started following a tetanus booster." *Id*. Petitioner described the pain as sharp/achy and rated it as ranging between four and eight out of ten. *Id*.

Physical examination of Petitioner's right shoulder revealed diminished right shoulder ROM with pain in all planes and positive impingement signs. Ex. 3 at 20. Dr. Henning performed an ultrasound-guided biopsy and steroid injection. *Id*. at 24, 37-39. Petitioner was diagnosed with right bicep tendonitis and acute right shoulder pain that Dr. Henning thought was "likely immunization related shoulder bursitis given timing of the tetanus shot and onset of pain." *Id*. at 24.

On November 18, 2020, Petitioner returned to Dr. Henning for right shoulder pain. Ex. 3 at 25. Dr. Henning again noted that Petitioner's pain was likely "related to tetanus booster." *Id*. Petitioner reported that her symptoms had improved with the prior steroid injection, but had since returned, and requested another injection. *Id*. Dr. Henning diagnosed Petitioner with right bicep tendonitis and administered a second steroid injection in her right shoulder. *Id*. at 27-28, 39-41.

Three months later (and now six months after vaccination (January 25, 2021), Petitioner followed up with Dr. Henning. Ex. 3 at 29. Petitioner reported that the second steroid injection had not been as effective as the first, and that her symptoms had "significantly worsened" since she was last seen. *Id*. Physical examination showed her active ROM was "equal and symmetric in all planes about the bilateral upper extremity." *Id*. at 30. Dr. Henning diagnosed Petitioner with calcific tendinitis of the shoulder and administered a third steroid injection. *Id*. at 30, 41-42. He also ordered an MRI and recommended a trial of a topical pain-relieving patch. *Id*. at 30-31.

On March 9, 2021, Petitioner underwent a right shoulder MRI. Ex. 4 at 1-2. The MRI showed a labral foramen variant at the anterosuperior aspect of the labrum. *Id*. No rotator cuff tears were detected. *Id*.

On June 10, 2021, Petitioner returned to Dr. Henning for continued right shoulder pain. Ex. 4 at 3. Dr. Henning noted that Petitioner's MRI was normal, and the steroid injections were helpful, but "short lived." *Id*. Petitioner reported that her symptoms had worsened since her last visit. *Id*. Physical examination showed that her upper extremity active ROM was equal and symmetrical in all planes. *Id*. at 4. Dr. Henning diagnosed Petitioner with right rotator cuff tendinopathy and chronic right shoulder pain. *Id*. Petitioner's treatment plan was to proceed with a Tenex procedure targeting the supraspinatus and subscapularis tendons. *Id*.

3

On July 8, 2021, Dr. Henning performed a sonographic-guided right supraspinatus and subscapularis tendon tenotomy on Petitioner's right shoulder. Ex. 4 at 7-10. Petitioner tolerated the procedure well. *Id*. She followed up with Dr. Henning by telehealth on July 29, 2021, stating that her symptoms had not changed since the Tenex procedure. Ex. 4 at 11-12. Dr. Henning recommended activity modifications, over-the-counter pain medications, and a gradual return to work.[4] *Id*.

Over two years later, Petitioner underwent a physical therapy examination on November 27, 2023. Ex. 11 at 1. She described right shoulder pain resulting from a vaccine that had begun three years and four months earlier. Ex. 11 at 1. Petitioner continued physical therapy and other treatment thereafter. Exs. 4, 6, 8-11,

### B. Declarations

Petitioner submitted three declarations in support of her claim.[5] Exs. 5, 12, 14. Petitioner states that the night of vaccination she felt "a lot of shoulder pain however I brushed it off as a typical localized shoulder pain." Ex. 5 at ¶ 1. The pain was "excruciating," and getting dressed, driving, and reaching for items on high shelves caused pain. *Id*. at ¶¶ 1, 3. Although Petitioner had experienced routine aches in her right shoulder prior to vaccination, any such pain was so minor that she did not even seek treatment for it, and had "fully resolved by the time [she] received" the at-issue vaccine. *Id*. at ¶ 3.

When Petitioner saw her cardiologist (August 4, 2020), she was experiencing "significant right shoulder pain," but did not mention it to her cardiologist because that was not the purpose of the visit. Ex. 5 at ¶ 2. And she did not report her shoulder pain at her July 27, 2020 PCP appointment because, although her shoulder was irritated and aching, "it was not yet at the point where I felt like I needed to be seen for it." Ex. 12 at ¶ 5. Petitioner explains that she does not go to a doctor or mention an ailment "unless it's absolutely necessary." *Id*.

Petitioner is an emergency room nurse, and knew that some shoulder soreness after vaccination was typical. Ex. 12 at ¶ 2. However, about two or three weeks after vaccination, she woke up and could not lift her right arm at all. Ex. 5 at ¶ 4. This prompted her to seek medical care quickly. *Id*.

At her August 11, 2020 PCP appointment, Petitioner and her PCP discussed when her pain started and what could have caused it. Ex. 12 at ¶ 6. Petitioner mentioned that she had received a tetanus booster almost a month earlier and that her arm had been

---

[4] It does not appear that any records indicate that Petitioner had been restricted from working.

[5] Although Petitioner labeled these filings affidavits, they are not notarized. Nonetheless, they are acceptable as declarations sworn under penalty of perjury. 28 U.S.C. § 1746.

sore. *Id*. She asked whether her shoulder pain could be related to vaccination, and her PCP "did not seem to think it was related at all" and continued asking questions to ascertain the cause. *Id*. Her PCP "shut down" the possibility that vaccination could have anything to do with her pain, so she thought harder and said that if she worked out too hard or slept on it wrong, her shoulder sometimes hurt. *Id*. Petitioner emphasizes that she did *not* say that her shoulder pain had been present for a year. *Id*.

When Petitioner first saw Dr. Henning (August 12, 2020), she explained her conversation with her PCP about possible causes of her shoulder pain, including vaccination, and mentioned that both shoulders sometimes got sore from workouts, work, and sports, but that "the pain in my right shoulder was completely different and really started in July" after vaccination. Ex. 12 at ¶ 7. Although they may have discussed other potential causes or timelines, Petitioner emphasizes that she made clear that the reason she sought treatment was her shoulder pain that had started in the past month. *Id*. She adds that as a patient "who could not figure out why my shoulder was in so much pain and after being told this could not be related to a vaccine shot, timelines got blurred." *Id*. at ¶ 9.

Petitioner's partner of seven years, Andon McIrvin, submitted a declaration in support of her claim. Ex. 13. Mr. McIrvin recalled that he doesn't recall Petitioner having complaints about her shoulder prior to the at-issue vaccination. *Id*. at ¶ 1. However, after vaccination, he recalls her making statements such as "[i]t's so weird, my shoulder is still sore." *Id*. Mr. McIrvin recalled an event a few weeks after vaccination where Petitioner woke up with tears coming down her face and stating, "I can't lift my arm" and was holding her right arm. *Id*. at ¶ 2.

## II.    The Parties' Arguments

### A.  Pre-vaccination Shoulder Pain

Petitioner asserts that the August 11, 2020 record stating that Petitioner had experienced right shoulder pain for almost a full year is "clearly inaccurate and contradicted by petitioner's most contemporaneous medical records." Petitioner's Motion for Ruling on the Record, filed Dec. 2, 2024, at *12 (ECF No. 48) ("Mot."). She explains that she asked her PCP if her shoulder pain could be related to vaccination, and her inquiry was "shut down . . . as not a possibility." Mot. at *12 (quoting Ex. 12 at 2). This led Petitioner to consider other possible causes, and she offered that if she worked out too hard or slept on her shoulder wrong, pain would sometimes result. *Id*.

Respondent argues that Petitioner's contemporaneous medical records demonstrate that she had "an ongoing health issue with intermittent right shoulder pain that predated her vaccination." Respondent's Response, filed Feb. 18, 2025, at *13 (ECF No. 50) ("Resp."). Respondent cites the August 11, 2020 record documenting that Petitioner reported right shoulder pain for over a year (Ex. 2 at 509), the August 12, 2020

record stating that Petitioner reported shoulder pain for "the past couple of months (Ex. 3 at 20), and Petitioner's declaration stating that she had "routine aches" in her right shoulder before vaccination (Ex. 5 at 1). Resp. at *13. Respondent asserts that the evidence suggests that Petitioner's pre-existing right shoulder pain recurred in the months prior to vaccination, then increased about ten to twenty days after vaccination. *Id*. Respondent argues that only after Dr. Henning suggested the possibility of a SIRVA did Petitioner begin to characterize her post-vaccination symptoms as distinct from her pre-vaccination shoulder pain. *Id*. at *14.

Petitioner points out that Respondent has not identified any diagnosis or treatment records describing shoulder pain prior to vaccination, and asserts this is because no such records exist. Petitioner's Reply, filed Mar. 19, 2025, at *2 (ECF No. 52) ("Reply"). And the August 11, 2020 PCP record Respondent emphasizes is itself internally inconsistent, describing her shoulder pain as having been present for several months in one place, and a year in another. Reply at *2.

### B. Onset

Petitioner explains that she is an emergency room nurse, and is "not the type to go get seen by a doctor or mention an ailment unless it's absolutely necessary." Mot. at *11 (quoting Ex. 12 at 2). And Petitioner insists that she did *not* tell her PCP that her shoulder pain had been present for a year. *Id*. at *12. Petitioner asserts that her medical record and testimonial. evidence support "an unbroken temporal and causal link" between vaccination and her first appointment for shoulder pain. *Id*. at *13.

Respondent argues that Petitioner has not preponderantly established that the onset of her shoulder pain began within 48 hours of vaccination. Resp. at *21. Although Petitioner related her shoulder pain to vaccination at the August 12, 2020 appointment, she also stated that she had pain symptoms for the prior couple of months, which *worsened* two weeks earlier. *Id*.

Petitioner emphasizes that her physiatrist, Dr. Henning, unequivocally stated – just three weeks after vaccination – that her right shoulder "pain started following a tetanus booster." Reply at *2. Petitioner takes issue with Respondent's unwillingness to accept this "clear and contemporaneous" statement by Petitioner's treating specialist. *Id*. at *3.

### III.    Legal Standards

Before compensation can be awarded under the Vaccine Act, a petitioner must preponderantly demonstrate all matters required under Section 11(c)(1), including the factual circumstances surrounding his or her claim. Section 13(a)(1)(A). In making this determination, the special master or court should consider the record as a whole. Section 13(a)(1). Petitioner's allegations must be supported by medical records or by medical opinion. *Id.*

6

To resolve factual issues, the special master must weigh the evidence presented, which may include contemporaneous medical records and testimony. *See Burns v. Sec'y of Health & Human Servs.,* 3 F.3d 415, 417 (Fed. Cir. 1993) (explaining that a special master must decide what weight to give evidence including oral testimony and contemporaneous medical records). "Medical records, in general, warrant consideration as trustworthy evidence.  The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Human Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

To overcome the presumptive accuracy of medical records testimony, a petitioner may present testimony which is "consistent, clear, cogent, and compelling." *Sanchez v. Sec'y of Health & Human Servs.,* No. 11-685V, 2013 WL 1880825, at *3 (Fed. Cl. Spec. Mstr. Apr. 10, 2013) (citing *Blutstein v. Sec'y of Health & Human Servs.,* No. 90-2808V, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998)). The Federal Circuit has "reject[ed] as incorrect the presumption that medical records are accurate and complete as to all the patient's physical conditions." *Kirby v. Sec'y of Health & Human Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021) (explaining that a patient may not report every ailment, or a physician may enter information incorrectly or not record everything he or she observes).

In addition to requirements concerning the vaccination received and the lack of other award or settlement,[6]  a petitioner must establish that he or she suffered an injury meeting the Table criteria, in which case causation is presumed, or an injury shown to be caused-in-fact by the vaccination he or she received. Section 11(c)(1)(C). The Vaccine Act further includes a "severity requirement," pursuant to which a petitioner demonstrate that they:

> (i) suffered the residual effects or complications of such illness, disability, injury, or condition for more than 6 months after the administration of the vaccine, or (ii) died from the administration of the vaccine, or (iii) suffered such illness, disability, injury or condition from the vaccine which resulted in inpatient hospitalization and surgical intervention.

Section 11(c)(1)(D).

"[T]he fact that a petitioner has been discharged from medical care does not necessarily indicate that there are no remaining or residual effects from her alleged

---

[6] In summary, a petitioner must establish that he received a vaccine covered by the Program, administered either in the United States and its territories or in another geographical area but qualifying for a limited exception and has not filed a civil suit or collected an award or settlement for his or her injury. Section 11(c)(1)(A)(B)(E).

injury." *Morine v. Sec'y of Health & Human Servs.*, No. 17-1013, 2019 WL 978825, at *4 (Fed. Cl. Spec. Mstr. Jan. 23, 2019); *see also Herren v. Sec'y of Health & Human Servs.*, No. 13-1000V, 2014 WL 3889070, at *3 (Fed. Cl. Spec. Mstr. July 18, 2014) ("a discharge from medical care does not necessarily indicate there are no residual effects"). "A treatment gap . . .  does not automatically mean severity cannot be established." *Law v. Sec'y of Health & Human Servs.*, No. 21-0699V, 2023 WL 2641502, at *5 (Fed. Cl. Spec. Mstr. Feb. 23, 2023) (finding severity requirement met where petitioner sought care for under three months and had met physical therapy goals but still lacked full range of motion and experienced difficulty with certain activities, then returned to care nearly five months later reporting stiffness and continuing restrictions in motion); *see also Peeples v. Sec'y of Health & Human Servs.*, No. 20-0634V, 2022 WL 2387749 (Fed. Cl. Spec. Mstr. May 26, 2022) (finding severity requirement met where the petitioner sought care for four months, followed by fifteen-month gap); *Silvestri v. Sec'y of Health & Human Servs.*, No. 19-1045V, 2021 WL 4205313 (Fed. Cl. Spec. Mstr. Aug. 16, 2021) (finding severity requirement satisfied where petitioner did not seek additional treatment after the five-month mark.

The most recent version of the Table, which can be found at 42 C.F.R. § 100.3, identifies the vaccines covered under the Program, the corresponding injuries, and the time period in which the particular injuries must occur after vaccination. Section 14(a). Pursuant to the Vaccine Injury Table, a SIRVA is compensable if it manifests within 48 hours of the administration of a flu vaccine. 42 C.F. R. § 100.3(a)(XIV)(B). The criteria establishing a SIRVA under the accompanying Qualifications and Aids to Interpretation ("QAI") are as follows:

> Shoulder injury related to vaccine administration (SIRVA). SIRVA manifests as shoulder pain and limited range of motion occurring after the administration of a vaccine intended for intramuscular administration in the upper arm. These symptoms are thought to occur as a result of unintended injection of vaccine antigen or trauma from the needle into and around the underlying bursa of the shoulder resulting in an inflammatory reaction. SIRVA is caused by an injury to the musculoskeletal structures of the shoulder (e.g. tendons, ligaments, bursae, etc.). SIRVA is not a neurological injury and abnormalities on neurological examination or nerve conduction studies (NCS) and/or electromyographic (EMG) studies would not support SIRVA as a diagnosis (even if the condition causing the neurological abnormality is not known). A vaccine recipient shall be considered to have suffered SIRVA if such recipient manifests all of the following:

> (i) No history of pain, inflammation or dysfunction of the affected shoulder prior to intramuscular vaccine administration that would explain the alleged

signs, symptoms, examination findings, and/or diagnostic studies occurring after vaccine injection;

(ii) Pain occurs within the specified time-frame;

(iii) Pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered; and

(iv) No other condition or abnormality is present that would explain the patient's symptoms (*e.g.* NCS/EMG or clinical evidence of radiculopathy, brachial neuritis, mononeuropathies, or any other neuropathy).

42 C.F.R. § 100.3(c)(10).

A special master may find that the first symptom or manifestation of onset of an injury occurred "within the time period described in the Vaccine Injury Table even though the occurrence of such symptom or manifestation was not recorded or was incorrectly recorded as having occurred outside such period." Section 13(b)(2). "Such a finding may be made only upon demonstration by a preponderance of the evidence that the onset [of the injury] . . . did in fact occur within the time period described in the Vaccine Injury Table." *Id*.

## IV.    Ruling on Entitlement

### A.  Pre-vaccination Shoulder pain

The record in this case as a whole supports a finding that Petitioner likely did not have pre-vaccination shoulder pain that would explain her post-vaccination symptoms. The fact that two records suggest that Petitioner's shoulder pain began months, or even a year, *before* vaccination does raise serious concerns about this element. However, I note that Petitioner's medical records are otherwise bereft of *any* records of treatment or complaints about her right shoulder prior to vaccination. Thus, nothing corroborates the existence of pre-vaccination issues.

It is also noteworthy that Petitioner sought care for right shoulder pain just three weeks after vaccination (bolstering her claim), but did not do so beforehand (during the timeframe she would allegedly have been suffering). And her testimonial evidence supports this finding. Petitioner has credibly explained that her PCP dismissed the possibility that her shoulder pain resulted from vaccination, leading her to mention transitory, pre-vaccination activity-related aches and pains (even if they had resolved in her recollection). Ex. 5 at ¶ 3. It is not uncommon for a SIRVA claimant to report shoulder pain related to vaccination to a health care provider who dismisses the complaint (particularly when not much time has passed since vaccination). *See, e.g., Graczyk v. Sec'y of Health & Human Servs*., No. 21-0376, 2023 WL 4573868, at *6 (Fed. Cl. Spec. Mstr. June 16, 2023) (noting that at claimant's first medical appointment for shoulder pain, her doctor "appears to have dismissed her reports of pain and not provided any

treatment"); *cf. Eddings v. Sec'y of Health & Human Servs.*, No. 20-2058V, 2024 WL 5261996 (finding onset within 48 hours despite delay in seeking care and intervening medical appointment silent on shoulder pain, noting that the claimant contended that she mentioned her shoulder pain at that visit and was told it was a common occurrence); *Hirsch v. Sec'y of Health & Human Servs.*, No. 20-1110, 2023 WL 9229144, at *3 (Fed. Cl. Spec. Mstr. Dec. 5, 2023) (noting that a physician's failure to record a claimant's mention of shoulder pain at an appointment five days after vaccination did not establish that the claimant's pain did not exist at that time).

Furthermore, Petitioner's treating specialist thought her shoulder pain was "likely immunization related shoulder bursitis given timing of the tetanus shot and onset of pain." Ex. 3 at 24. This is persuasive evidence suggesting that he correlated her pain to vaccination, and not some prior injury. Thus, although the records suggesting a pre-vaccination onset warrant some weight, the preponderance of evidence does tip on this issue in Petitioner's favor.

### B. Onset

The record supports a finding that Petitioner's shoulder pain likely began within 48 hours of vaccination. Petitioner sought care three weeks after vaccination, relating her pain to the vaccination. Although she did not report her shoulder pain when she saw her PCP less than a week after vaccination, Petitioner has explained this omission, and returned to her PCP for shoulder pain just two weeks later.

It is common for SIRVA petitioners to delay seeking care for this amount of time – or *much longer* – because they expect the pain to go away on its own. *See Shiver v. Sec'y of Health & Human Servs.*, No. 21-1961V, 2024 WL 4544185, at *11 (Fed. Cl. Spec. Mstr. Sept. 16, 2024) (finding evidence preponderantly established that onset of shoulder pain occurred within 48 hours of vaccination where the petitioner first sought care just two weeks after vaccination); *Amor v. Sec'y of Health & Human Servs.*, No. 20-0978V, 2024 WL 1071877, at *6 (Fed. Cl. Spec. Mstr. Feb. 8, 2024) (noting that it is "common for petitioners in SIRVA cases to delay seeking care for weeks, or even months, in hopes that the pain will resolve without treatment" and finding onset was within 48 hours when Petitioner first sought care 23 days after vaccination).

Petitioner concedes that timelines were "blurred" when she was told that her pain could not be related to vaccination. Nevertheless, at her first visit to Dr. Henning and at her physical therapy evaluation, she related her pain to vaccination. Petitioner states that her pain began the evening of vaccination, and her partner's testimony supports this conclusion.

### C. Factual Findings Regarding Remaining QAI Criteria for Table SIRVA and Other Entitlement Requirements

Respondent does not contest the remaining statutory and SIRVA requirements,

and I find that they are preponderantly satisfied. Petitioner's shoulder ROM was limited, her symptoms were limited to her shoulder, and the record does not contain preponderant evidence that another condition would explain her post-vaccination symptoms. Ex. 3 at 20-41. She suffered residual effects of her injury for more than six months. Ex. 3 at 29.

Petitioner received a covered vaccine in the United States. Ex. 1; Ex. 7 at 12. And she states that she has not filed a civil action, or received compensation in the form of an award or settlement, for her vaccine-related injury. Ex. 14 at 1. Thus, Petitioner is entitled to compensation.

## Conclusion

Based on my review of the record as a whole, I find that it is more likely than not that Petitioner did not experience pre-vaccination shoulder pain that would explain her post-vaccination symptoms, and that her shoulder pain began within 48 hours of vaccination. I also find that all SIRVA Table requirements are preponderantly met, as are all statutory requirements for entitlement. Therefore, Petitioner's motion for a ruling on the record that she is entitled to compensation is **GRANTED**.

**IT IS SO ORDERED.**

<u>**s/Brian H. Corcoran**</u>
Brian H. Corcoran
Chief Special Master

11